E-FILED
Tuesday, 20 October, 2026 04:55:53 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| ANCHOR STATE BANK,<br>Plaintiff,<br><br>v.<br><br>GERALD M. THOMPSON,<br>Defendant. | Case No. 1:26-cv-01219-JEH-RLH |

## Order

Now before the Court is Plaintiff's Motion for Default Judgment.[1] (D. 19). For the reasons set forth *infra*, the Plaintiff's Motion for Default Judgment is DENIED, and the entry of default is set aside.

### I

The Plaintiff, Anchor State Bank (Anchor), commenced this action on May 26, 2026, against the Defendant, Gerald M. Thompson (Thompson), alleging breach of guaranty. (D. 1). Thompson's deadline to answer or otherwise respond to Anchor's Complaint was June 24, 2026. Thompson failed to act by the deadline, and the Court sua sponte extended the deadline to July 13, 2026, a deadline Thompson once again missed. *See* 06/29/2026 Text Order. On July 20, 2026, Anchor filed a Motion for Entry of Default (D. 11), which the Court granted on July 21, 2026. *See* 07/21/2026 Text Order.

On July 22, 2026, Thompson filed a Motion to Dismiss for lack of jurisdiction (D. 16), which this Court found moot due to the default against Thompson. *See* 08/14/2026 Text Order. On August 11, 2026, Anchor filed a Motion for Default

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

Judgment against Thompson. (D. 19; D. 20). Thompson once again failed to respond by the deadline, which the Court sua sponte extended to September 2, 2026. *See* 08/27/2026 Text Order. On September 2, 2026, Thompson responded. (D. 23). On September 16, 2026, Anchor replied. (D. 30). The matter is now fully briefed.[2]

**II**

Anchor, the lender, made the Loan to Borrower in the original principal amount of $9,500,000.00, as evidenced by the Note.[3] The Loan is secured by, among other things, a commercial guaranty made by Thompson. Thompson executed and delivered to Anchor the Guaranty dated July 3, 2023, whereby Thompson agreed to unconditionally guarantee Borrower's obligations to Anchor under the Note. The Guaranty was necessary to induce Anchor to issue the Loan.

Borrower committed various defaults under the Note, including by failing to make payments due under the Loan. Anchor sent Borrower and Thompson written notice of the defaults via letters dates March 30, 2026, and April 17, 2026 (Default Letters). Borrower failed to cure the defaults and pay the indebtedness due under the Note after receiving the Default Letters. Because Borrower failed to pay the indebtedness under the Note, all the obligations under the Note were accelerated and the amount owed under the Note remains due and owed in full, including late charges, attorneys' fees, and expenses (the Indebtedness).

After Borrower failed to cure its defaults, Anchor sent Thompson a demand letter on May 19, 2026. Thompson has failed to pay Anchor the Indebtedness and

---

[2] Although the Court is denying the Plaintiff's Motion for Default Judgment and setting aside the entry of default, the Court emphasizes that henceforth it expects all counsel to strictly comply with deadlines set by the Court or required by the Federal Rules of Civil Procedure. The Court will not sua sponte extend deadlines, nor will it grant a motion to extend a deadline which is filed after that deadline has expired.

[3] This factual summary comes from Anchor's Complaint and Motion for Default Judgment. This Court assumes, without finding, the information to be true for the purpose of ruling on this motion. *See United States v. Norwood*, 812 Fed.App'x 365, 370 (7th Cir. 2020) ("Upon the entry of default, the well-pleaded allegations of the [plaintiff's] complaint were taken as true.").

otherwise to satisfy his obligations to Anchor under the Guaranty, despite Anchor's written demand that Thompson satisfy his obligations under the Guaranty. Anchor filed this lawsuit in response on May 26, 2026.

The parties dispute whether Anchor properly executed service on Thompson. According to Anchor, Anchor retained a process server based in Colorado to serve Thompson. The service address that Anchor provided was the address where Thompson lived for the last 22 years; the address Thompson last provided to Anchor (Thompson was required to update Anchor of any address changes under the Guaranty and he did not); and the address where Thompson continuously represented his address to be on official documents like loan applications and tax returns. The process server served the Complaint and a summons at the service address on a woman who identified herself as Thompson's spouse, Nancy Thompson.

Thompson, however, asserts he had not lived at the service address for the 12 months leading up to Anchor's service. Moreover, Thompson asserts that the woman was Nancy Heck and Thompson is not married, nor has he ever been married, to Nancy Heck.

**III**

Federal Rule of Civil Procedure 55 governs the entry of default judgment. FED. R. CIV. P. 55. A court may enter judgment against a defaulted party under Federal Rule of Civil Procedure 55(b)(2). FED. R. CIV. P. 55(b)(2). In general, a default judgment establishes that a defendant is liable to the plaintiff as to each cause of action alleged in the complaint as a matter of law. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (quoting *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982)). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Id.* "Once the default is established, and thus liability, the plaintiff

still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). The Court may, however, "set aside an entry of default for good cause". FED. R. CIV. PRO. 55(c).

**IV**

Anchor argues this Court should grant Anchor's motion for default judgment, find that Thompson breached the Guaranty, and award Anchor $9,631,026.78 plus $6,343.76 per day plus attorneys' fees. Thompson responds arguing (1) the motion should not be granted because Thompson was not validly served, (2) this Court did not acquire personal jurisdiction over Thompson because service was improper, and (3) good cause exists under Rule 55(c) to set aside the entry of default.

**A**

Whether Thompson was properly served is a preliminary matter. After filing a complaint, the plaintiff must ensure the defendant is properly served. FED. R. CIV. PRO. 4(b). If a defendant is not served within 90 days of filing the complaint, the action is dismissed without prejudice. *Id.* at 4(m). One way a defendant can be served is when a copy of the summons is left at the defendant's "dwelling with someone of suitable age and discretion who resides there". *Id.* at 4(e).

According to Anchor, Thompson was validly served when Anchor hired a process server in Colorado who served the complaint and summons on June 3, 2026, at Thompson's service address to a woman who claimed to be Thompson's spouse. Thompson argues that the service address was not his home, and the woman served was not his roommate or wife.

"A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (internal citation omitted). Here, Anchor filed proof of service on May 26, 2026. When Thompson

then failed to act, the Court filed an entry of default holding, "The docket reflects that Plaintiff served the summons and complaint on Defendant Thompson's spouse at his home." *See* 07/21/2026 Text Order.

The prima facie evidence of the signed return shifts the evidentiary burden to the defendant to "overcome [the presumption] only by strong and convincing evidence." *Relational, LLC v. Hodges*, 627 F.3d 668, 672 (7th Cir. 2010). To overcome the prima facie evidence of valid service, Thompson argues that the service address was not his home and the woman was not his roommate or wife.

First, Thompson argues that the service address was not his home. Thompson attached a declaration where he swears and affirms that on June 3, 2026, (the date of alleged service) and the preceding 12 months, Thompson did not live at the service address. Thompson, however, listed the service address as his residence in October 2025 on his tax return, in November 2025 on his loan modification, in December 2025 on a stipulation to Anchor, and in February 2026 on his loan application (saying the service address was his residence for the last 22 years), creating a conflict with Thompson's sworn statement that Thompson did not live at the service address from June 2025 to the present. In addition to the sworn declaration, Thompson attached a scanned envelope addressed to Thompson at an address that is not the service address. This envelope, however, does not have a date. Additionally, Thompson does not offer a date for the envelope in his sworn declaration. Was this envelope addressed to Thompson on or before June 3, 2026? The Court has no way to know. If Thompson really lived at this alternate address on June 3, 2026, Thompson could have alleged a date for the mail. Thompson also could have included his lease, title, utilities, or some other documentation clarifying when Thompson started living at this alternate address. Thompson certainly failed to present strong and convincing evidence that Thompson did not live at the service address on June 3, 2026. At best, Thompson

raises some level of doubt, which is not enough to overcome the presumption of the signed return.

Second, Thompson argues that the woman who received the summons and complaint was not Nancy Thompson but Nancy Heck, and she was not Thompson's spouse. Thompson argues that his 2024 tax documents, which Anchor possesses, show Thompson filed his 2024 taxes as Single. This is not persuasive to the Court because Thompson's marriage status in 2024 is not strong and convincing evidence that Thompson was not co-habituating with Nancy at the service address on June 3, 2026. For Thompson to be properly served through Nancy, Thompson and Nancy do not need to be married or even romantically involved; rather, for Thompson to be properly served through Nancy, Nancy must be of suitable age, suitable discretion, and reside at the location with Thompson. *See* FED. R. CIV. PRO. 4(e)(2)(B) ("[A]n individual . . . may be served . . . by . . . leaving a copy of [the complaint and summons] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"). Thompson does not argue that Nancy is not of suitable age, not of suitable discretion, or that Nancy does not live at the service address. Consequently, this Court does not care whether Nancy and Thompson were married—this Court only cares whether Thompson overcame the presumption that he also lived at the service address with strong and convincing evidence. As discussed above, Thompson did not.

Finally, as a practical matter, Thompson represented that his address was the service address in the Guaranty with Anchor. Under the Guaranty, Thompson had a contractual obligation to update Anchor if his address ever changed. Thompson never updated Anchor of an address change. Either Thompson never changed his address and continued to live at the service address or Thompson breached his contractual duty to update Anchor of his address.

In conclusion, Anchor's signed return of service constitutes prima facie evidence of valid service, and Thompson failed to overcome that presumption with strong and convincing evidence. Thompson was properly served.

**B**

Because Thompson was properly served, Thompson's second argument regarding Personal Jurisdiction, an argument which relies on improper service, is now moot.

**C**

Finally, this Court must consider whether good cause exists under Rule 55(c) to set aside the entry of default. *See* FED. R. CIV. PRO. 55(c) ("The court may set aside an entry of default for good cause"). The Seventh Circuit has defined "good cause" to mean "failing to respond to a summons or complaint through inadvertence (rather than willfully ignoring pending litigation)." *Norman v. City of Lake Station*, 845 Fed.App'x 459, 460 (7th Cir. 2021); *see also Bentz v. Newbold*, 843 Fed.App'x 820, 822 (7th Cir. 2021) ("It cannot be an abuse of discretion when a district judge decides to tolerate a defendant's harmless delay in answering a complaint.") (internal citation omitted). "To succeed in the vacation of a default order under Rule 55(c), the defendant must show (1) good cause for its default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Medical Supplies, Inc.*, 961 F.3d 942, 949 (7th Cir. 2020) (internal citations omitted).[4]

---

[4] The parties do not spend much time on the third element—a meritorious defense—and neither will this Court. When dealing with entries of default, "meritorious defense" is not a high bar. *See Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994) (explaining the standard for vacating an *entry* of default and setting aside a default *judgment* are formulated the same, but the application for a default *judgment* is much more limited and stringent). For vacating an *entry* of default, "bare legal conclusions set forth in [the] defendants' proposed answer" are not enough. A non-frivolous, personal jurisdiction argument, however, can be enough, even if the court ultimately rejects the argument. *See Strabala v. Zhang*, 318 F.R.D. 81, 91 (N.D. Ill. 2016) (holding Defendants showed a possible meritorious defense by raising "non-frivolous arguments regarding the Court's assertion of personal jurisdiction" that the court ultimately rejected). Similarly,

Here, Thompson provides sufficient good cause for his default. Thompson's first filing was a motion to dismiss for insufficient service and lack of personal jurisdiction on July 22, 2026. The motion to dismiss was filed the same day as Thompson's counsel was admitted to this District, and Thompson alleges this was the first day his counsel could appear. While Thompson's answer was due June 24, 2026, making Thompson's motion almost one month late, the Court is inclined to give Thompson leeway for a few reasons. First, Thompson lives in Colorado, and the Court is sympathetic to a delay in securing counsel in the Central District of Illinois. Second, while the Court ultimately finds that service was valid (see above), the Court is sympathetic to Thompson's delayed action given the non-frivolous, if not ultimately meritorious, service question. Moreover, Thompson filed the motion to dismiss the same day his Counsel appeared, suggesting the delay was inadvertent, not willful.

More troubling is the delay between the 08/14/2026 Text Order and Thompson's response to the motion for default judgment. On August 14, 2026, this Court filed a Text Order mooting Thompson's motion to dismiss explaining Thompson must first move to vacate the default. Thompson failed to timely respond to Anchor's motion for default judgment, responding only after the Court sua sponte extended Thompson's deadline. Thompson explained in his response that the delay stemmed from an abundance of caution to not waive a jurisdictional challenge and a misunderstanding of the law. The Court is once again inclined to accept Thompson's excuse as sufficient good cause because Thompson ultimately complied with the Court's extended deadline.

Notably, Anchor is not prejudiced by Thompson's delay. As Anchor explained in the motion for default judgment, if Anchor succeeds on the merits,

---

Thompson's service and personal jurisdiction arguments meet the standard under 55(c) as non-frivolous, meritorious arguments.

Anchor is entitled to $6,6343.76 each day in interest.[5] If Anchor succeeds on the merits, Anchor will be compensated for Thompson's delay, not prejudiced. Inversely, Thompson's delays will prejudice himself if Anchor succeeds on the merits because Thompson will have to pay more in interest due to his own delays.

With the two parties present and ready to litigate, and with sufficiently good cause from Thompson for the delays, the entry of default is set aside. With the entry of default set aside under Rule 55(c), this Court denies Anchor's motion for default judgment, and the case will proceed.

**V**

For the reasons set forth *supra*, the Plaintiff's Motion for Default Judgment is DENIED, and the entry of default is set aside. The Defendant has 20 days from the entry of this Order to file an Answer or a Rule 12 motion to the Plaintiff's Original Complaint.

Should a party file a motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorneys' fees of the opposing party related to their response to the motion for reconsideration.

*It is so ordered.*

Entered on October 21, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

[5] The Court is assuming but not finding that Anchor would be entitled to $6,6343.76 each day in interest. This belief is based on the Plaintiff's Motion for Default Judgment. (D. 20 at ECF p. 4).